## HACKETT v. A. L. & J. J. REYNOLDS CO.

(Supreme Court, Appellate Term. March 5, 1900.)

CONTRACTS—PUBLIC POLICY.

     A contract between an employer engaged in the wholesale grocery business through the medium of salesmen driving over established routes, and supplying grocers along the line, and an employé, that the latter shall not engage in a similar business within six months after the contract of employment had ceased, and within ten miles of the city where the former's business is located, either on his own account or as servant or employé of others, is reasonable and not against public policy.

Appeal from municipal court, borough of Manhattan, First district.

Action by Frank Hackett against the A. L. & J. J. Reynolds Company for the recovery of money. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVENTRITT, JJ.

Grover, Sweezy & Glover, for appellant.

Wm. E. Cook, for respondent.

FREEDMAN, P. J.    This action was brought by the plaintiff to recover the sum of $200; being the amount deposited by him with the defendant, upon entering its employ, as security on his part for the faithful performance of the terms and conditions of two written contracts, for the alleged breach of which the defendant had refused to refund the amount aforesaid so deposited by the plaintiff. Each of said contracts contained the following clause:

"That he [meaning the plaintiff] would not, within the period of six months after his employment by said company shall cease, directly or indirectly, engage in business in the city of New York, or at any point within a radius of 10 miles from the city or county of New York, in competition with said company, either on his own account or as servant or employé of others."

The contracts further provided that, in case of a violation by the plaintiff of those conditions, the amount aforesaid so deposited should be forfeited, and adjudged to be liquidated damages, and become the absolute property of the defendant.    At the time the contracts were executed the defendant was engaged in business as a wholesale dealer in butter, cheese, and groceries; its sales being made mainly through the medium of salesmen driving over established routes, and supplying grocers doing business along the line of such routes.    The plaintiff entered into the employ of the defendant in June, 1894, and continued to act as salesman, over the routes designated and among the customers supplied by the defendant, until September, 1898, when he was discharged,—for what reason, does not appear.    On the day following his discharge he entered into the employ of a firm, the members of which were former employés of the defendant, by whom he was furnished with a horse and wagon, and with goods similar in character to those previously sold by him for the defendant, and until the time of the trial of this action he was engaged in daily driving over the same routes, and endeavoring to sell goods to the same customers to whom he had sold while in the employ of the defendant; and he testified upon the trial that he had succeeded in retaining a portion of the trade that had previously been directed to and enjoyed by the defendant. It was also undisputed that the defendant had suffered material damages by reason of the sales so made by the plaintiff contrary to the provisions of the contracts made by him.    The plaintiff had a judgment in the trial court for the amount of his deposits, from which judgment the defendant appeals.

The respondent seeks to uphold the judgment thus obtained solely upon the ground that the provisions of the contracts made by the plaintiff are harsh, unreasonable, and in restraint of trade, and therefore not enforceable.    That position is untenable.    The plain-

tiff voluntarily executed the contracts, with full knowledge of their conditions, and makes no claim that he was imposed upon in any way. As a condition of his employment, the defendant required that the plaintiff should agree to refrain from interfering with its business for a limited time, and within a limited space, after he should leave the defendant's employ, and provided for the amount of damages that might result from a breach of such agreement. The value of the defendant's business consisted not merely of the property invested and the goods sold by it, but, as well, in the knowledge of the location of its routes, and the names of the customers to whom it was accustomed to make sales. This knowledge was in the nature of a trade secret, and was imparted to the plaintiff at the time he was employed by the defendant, solely to enable him to profitably and intelligently attend to the business of the defendant. It was an essential condition of his engagement that he should not make use of such information to the detriment of the defendant for the space of six months, and within the limits of ten miles of the county of New York, under the penalty of the forfeiture of the amount of his deposits. These terms and conditions were not harsh and unreasonable, and the courts have frequently held that contracts containing provisions of a similar character and import violate no rule of public policy. Stanley v. Pollard, 5 Misc. Rep. 490–492, 25 N. Y. Supp. 766; A. L. & J. J. Reynolds Co. v. Dreyer, 12 Misc. Rep. 368, 33 N. Y. Supp. 649; Davies v. Racer (Sup.) 25 N. Y. Supp. 293; Tode v. Gross, 127 N. Y. 480, 28 N. E. 469, 13 L. R. A. 652; Diamond Match Co. v. Roeber, 106 N. Y. 473, 13 N. E. 419. As a new trial must therefore be ordered herein, the other reasons urged by the appellants as grounds for a reversal of the judgment need not be considered.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event. All concur.