ALTSCHUL-BATTERSON COMPANY, INC., Appellant, *v.* IRVIN G. MARKOWITZ, Respondent.

First Department, June 12, 1925.

Contracts — action to restrain defendant, former employee of plaintiff, from engaging in insurance brokerage business or disclosing or using plaintiff's list of customers — defendant's position was general assistant to president of plaintiff — defendant had full knowledge of business and was under contract to purchase part interest — contract provided that for stated period after termination defendant would not engage in brokerage insurance business in New York city or use list of customers — defendant, after leaving plaintiff, violated contract — error to deny temporary injunction on ground that contract is harsh and unduly exacting.

In an action to restrain the defendant, a former employee of the plaintiff, from engaging in insurance brokerage business in New York city or disclosing or

49

using plaintiff's list of customers in violation of the contract of employment, in which it appears that the defendant was employed by the plaintiff as general assistant to the president, a very important position, that while in that position he had full knowledge of the business of the plaintiff and was fully informed of the names of plaintiff's customers, and that his contract provided that for a stated period after the termination of the employment he would not engage in brokerage insurance business or aid any rival or competing insurance brokers in the city of New York or disclose or furnish to any person or use plaintiff's list of customers, it was error for the court to deny an injunction *pendente lite* on the ground that the contract was harsh and unduly exacting.

APPEAL by the plaintiff, Altschul-Batterson Company, Inc., from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 12th day of May, 1925, denying plaintiff's motion for an injunction *pendente lite*.

*I. Maurice Wormser* [*Benjamin Bernstein* with him on the brief], for the appellant.

*Reuben Dorfman,* for the respondent.

MARTIN, J.:

The plaintiff, a domestic corporation, has been engaged since August 31, 1921, in the general insurance brokerage business and in adjusting insurance losses. It succeeded to and took over the business of Morris J. Altschul, its president and majority stockholder. He had been engaged in the general insurance brokerage business from 1906 to 1921, and had upwards of 1,000 active accounts or customers for whom he procured various kinds of insurance. These were transferred to the plaintiff.

It is averred that, up to the time of the commencement of this action in April, 1925, the plaintiff and its predecessor, Morris J. Altschul, had expended at least $15,000 in various kinds of advertising to build up the business. At present there are more than 2,000 active accounts on the books of the plaintiff. It is asserted that the names and addresses of its customers have been compiled into an original list which constitutes a trade secret, and which is made known to no one except its officers, its manager, the bookkeeper and the assistant to the president.

The defendant was first employed by plaintiff in April, 1923. In the beginning he had the work of " placing " with various insurance companies, either personally or by telephone, orders which had been received for different kinds of insurance. After being thus employed for a period of nine or ten months, the defendant was promoted. He became the general assistant to the president. The terms of the employment and defendant's status were considered sufficiently important to warrant a formal written

agreement. This was effective for the period of one year commencing January 1, 1924, and ending January 1, 1925. In his new position the defendant " practically was in charge of the entire business of the company and had access to all the records, including the ledger of accounts receivable, which contains a complete record and list of all the customers " with whom the corporation did business.

The duties which defendant was to discharge as " general assistant to the president " of the plaintiff brought him in touch with its customers and gave him access to the confidential information of its business as well as to its records and memoranda. That such knowledge was considered valuable is indicated by recitals in one of the agreements made between the parties during the course of the employment, where it was provided:

" *Third.* The party of the second part specifically agrees that he will not at any time during his employment, nor at any time within five years after his employment shall have been terminated under this contract, disclose to any person, firm or corporation whatever information of any kind or nature which he might obtain during his employment by the party of the first part hereunder, nor shall he disclose the contents of any records, memoranda or books that he may have obtained or learned during his employment; nor shall the party of the second part, within the time aforementioned, in any manner whatever, solicit, or accept, the custom, trade or business of any customer of said business, nor do any other act which shall prejudice the business of the party of the first part."

It was upon entering the third and last stage of defendant's employment that the parties executed the written agreement now under consideration. The circumstances leading up to its execution are important. The defendant desired to take an interest in plaintiff's business. To afford him this opportunity, plaintiff corporation was reorganized. Its authorized stock was changed into 2,000 shares with no par value, it having had stock with a stated par value. Morris J. Altschul, president of plaintiff corporation, held 1,980 shares. He agreed to sell to defendant and defendant agreed to buy 300 of these for $3,750, to be paid under very liberal and easy conditions. Five hundred dollars was to be paid upon the signing of the contract, and the balance of $3,250 out of dividends to be received by defendant on his stock. After the expiration of ten years from the date of the agreement, defendant was to pay any balance that might then be due to Altschul on account of this sale of stock.

At the time he was thus employed for the last time, as it turned

First Department, June, 1925.    [Vol. 213

out, defendant was elected first vice-president of plaintiff. He continued to be " assistant to the president;" and he was also to perform such other duties as might be assigned to him from time to time. " For discharging the duties of First Vice President " his salary was to be ten dollars per week; and the term of employment was five years from January 1, 1925, unless sooner termi- nated by plaintiff, as provided in clause ". fourth," " upon giving to the party of the second part in writing not less than thirty (30) days' notice of its intention to exercise such right and option."

By the agreement it was also provided:

" *Fifth.* It is expressly agreed that for a period of twelve (12) months after the termination of his employment, for any cause whatsoever, the party of the second part will not, directly or indirectly, as employer, employee or otherwise, engage in the brokerage business of fire insurance, life, marine, accident, fidelity; employers' liability, burglary, plate glass insurance and all other kinds of insurance, and in such other business as this company is engaged in, or in any business similar thereto, nor act in aid of the business of any rival, or competing person, firm or corporation in the same, or a similar business within the Boroughs of Man- hattan, Brooklyn, Bronx, Richmond and Queens in the City of New York; and that the party of the second part will not, at any time, disclose or furnish to any person, firm or corporation other than the President of the party of the first part, the names or addresses of any of the customers of the party of the first part, the inception and/or expiration dates of the insurance policies on the books of the party of the first part, and that the party of the second part will not, at any time, solicit or canvass the trade or patronage of the customers of the party of the first part, or solicit or procure insurance from any of them for any other person, firm or corporation engaged in the brokerage business of fire insurance, life, marine, accident, fidelity, employers' liability, burglary, plate glass insurance or any other kind of insurance or in any similar business."

The sole ground for the refusal of an injunction at the Special Term was that the contract relied upon as the basis for the appli- cation is so harsh and inequitable that it would not warrant a court of equity in granting such relief. This is clearly untenable, and, on the appeal, it does not appear to be the sole ground relied upon by defendant. He seeks to uphold the order on additional grounds. He says he was discharged from his employment because of his non-payment of a check given on account of the stock purchased. He also says he was fraudulently induced to enter into the employment of plaintiff corporation. He asserts as well

that he is not violating his covenants and is not competing with the plaintiff in violation of the requirements of the contract. He would have it appear that he was an unimportant employee. From the documentary evidence it is apparent that the defendant was a very important employee. He was expected, eventually, to become a part owner of the business, on performance of his contract to pay for the stock.

The parties were free to enter into the agreement which they made. Plaintiff had a right to impose the conditions stated therein, in order to protect its business should the defendant see fit to leave at any time. Under the circumstances the contract is neither harsh nor unduly exacting. In *Eastern New York Wet Wash Laundry Co.* v. *Abrahams* (173 App. Div. 788) it was held that where an employee at the time of his employment by a wet wash laundry company agreed that for a period of eighteen months after the termination of the employment he would not directly or indirectly, as employer, employee or otherwise, engage in said business or act in the aid of any rival or competing person, firm or corporation within the boroughs of Manhattan, The Bronx, or Queens, the employer in a suit to restrain such employee from continuing in the laundry business with a competing company and soliciting plaintiff's customers, in violation of the agreement, was entitled to an injunction *pendente lite*.

That the defendant is deliberately violating the terms of the contract is demonstrated beyond question by documentary evidence.

He is endeavoring to make it appear that he is a guileless youth and has been imposed upon by the plaintiff. Even if the plaintiff's president be a rather overshrewd business man, and assuming that his acts do not always comport with fair dealing, the affidavits disclose that the defendant has had much experience during the entire period of his business career. It is also shown that his version of his business connection and dealings with the plaintiff is untrue. Though seeking sympathy upon the score that he was overreached because of his inexperience, he states in one part of an affidavit that he has had much experience, having been in this line of business since he was sixteen years of age.

That he knew he was doing wrong is apparent. That is shown by his recent efforts to secretly secure orders from the customers of plaintiff for a competitor. If the defendant believed he had the defenses he now asserts and that he could sustain the allegation that he was discharged, it is not likely that he would be securing business for a competitor by such deceptive means. He tried to hide his identity. There would be no reason for this if he had the grounds of defense which he now sets forth.

The order should be reversed, with ten dollars costs and disbursements, and the motion for an injunction *pendente lite* granted, with ten dollars costs.

CLARKE, P. J., DOWLING, FINCH and McAVOY, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs. Settle order on notice.